ANDREW R. HADEN
Acting United States Attorney
OWEN ROTH
Assistant United States Attorney
California Bar No. 335891
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7710
Email: owen.roth@usdoj.gov

Attorneys for Plaintiff
The United States of America

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-CR-3382 AJB |
| Plaintiff, | **SENTENCING MEMORANDUM OF THE UNITED STATES** |
| v. | |
| JAMES CHARLES RIVERA, | |
| Defendant. | |

The Court should sentence Rivera to the parties' agreed upon sentence of 96 months in custody.[1] Rivera led an international scheme to distribute steroids and other substances over the "dark web," used several people in the United States to further his domestic distribution, and laundered proceeds through cash and cryptocurrency. His longstanding, sophisticated, illegal operation requires this kind of substantial sanction.

---

[1] The Government respectfully urges the Court to adopt the sentencing guidelines calculations from the plea agreement. The PSR appears to offer a confused calculation – it purports to rely on the conviction for conspiring to launder monetary funds, yet imports the drug trafficking guidelines into that calculation. As the Government reads the guidelines, the money laundering provisions are discrete and turn on considerations like the amount of laundered funds (the "loss amount"), the defendant's knowledge of the underlying criminal activity, a conviction under 18 U.S.C. § 1956, and so on. That plea agreement correctly applies these calculations for both counts under the indictment, and groups them under Chapter Three. In any event, Probation ultimately joins the recommendation of 96 months.

     The PSR accurately captures the nature of the offense conduct. Beginning before 2018 and continuing through 2021, Rivera led a worldwide distribution network for steroids and related substances. Operating on the "dark web" under the moniker, "JuicePal," Rivera arranged and directed the distribution of these substances in at least forty-three states domestically and across the world, in Canada, the United Kingdom, the European Union, Germany, and Australia. The scope of his distribution was substantial – in one seizure alone, investigators seized hundreds of vials of steroids and large quantities of capsules, which had an estimated value in the hundreds of thousands of dollars. This seizure, though significant, did little to disrupt the scheme. The parties have agreed for guidelines purposes that the distribution activity exceeds 60,000 units of Schedule III substances; the breadth and duration of the scheme more than justified that agreement.

     Rivera's scheme was sophisticated. As noted, he operated under the moniker "JuicePal" on the dark web, using the anonymity of that portion of the internet to mask his identity and his operations. He used encrypted communications programs to shield his communications with coconspirators. And, he accepted payment using cryptocurrency, a commonly understood method of avoiding identification as the recipient of those funds. Rivera also worked with no fewer than four domestic coconspirators (who, for the most part, did not know his name). These individuals variously manufactured steroids for him, stored his steroids and the raw ingredients, shipped steroids to customers (who placed orders through the dark web), and received cash payments that were both remitted to Rivera and ploughed back into the scheme. Rivera sourced the raw materials for the scheme from China and had them provided to these conspirators, and directed their activity.

     The scheme was also profitable. Rivera took in hundreds (if not thousands) of orders over the years he was being investigated (including from at least one professional bodybuilder). His "JuicePal" brand of steroids was known on dark-web steroids forums as a high-quality brand, and his own marketing showed that he ran a brisk business. The PSR documents the amount of Bitcoin that Rivera took in during the course of the scheme; at the lowest point of the market, that amount was still worth more than $1.4 million. The parties

*Sentencing Memorandum of the United States*      2

have reached an agreed-upon amount of loss for purposes of resolving the case; that amount reflects a conservative estimate of proceeds that were concealed or used to promote the scheme, and it is well supported by the facts of the case.

Finally, Rivera conducted his scheme from abroad. During the years of this investigation, investigators found that Rivera (a United States Citizen) lived exclusively outside the United States. They assess that he lived in Asia and Russia. Indeed, when Rivera was arrested disembarking from an international flight in December 2021, it was the first time he had come to the United States in years. The facts of this case made clear that Rivera financed his lifestyle abroad by running this scheme, which he ran with success for years.

In this case, the recommended outcome – just one month short of the low end of the guidelines range as calculated in the plea agreement – is both necessary and sufficient. Principally, the nature and circumstances of the offense are eye-opening: Rivera led a long-standing scheme to distribute steroids all over the world. He did so with sophisticated means, taking advantage of the "dark web" and other anonymity tools to conduct the scheme, directing several co-conspirators, and profiting handsomely. He also did so from abroad, which had the effect (even if not his express intent) of further frustrating the efforts of U.S. law enforcement to apprehend him and stop his scheme. Nothing about the nature of this conduct suggests that a sentence out of step with the guidelines is appropriate.

So too, other core considerations under Section 3553(a) call for this sentence. Too often, criminal actors adept at using the "dark web" and similar anonymity tools – such as those that disguise internet protocol addresses, encrypt communications, "tumble" virtual currency transactions to further mask the parties to a transaction, and so on – believe they can act with impunity because their activity is too difficult for law enforcement to find. Rivera was one of these individuals; his punishment must send a strong reminder that law enforcement is quite capable of infiltrating these schemes, and that the consequences for them are severe.

Similarly, the Court must look sternly upon the core of this activity, the successful effort to distribute an overwhelming quantity of steroids. These kinds of drugs are well

known for their harmful effects on users, and they are controlled for good reason. Moreover (and perhaps unique among controlled substances) steroids facilitate cheating – athletes use them to obtain unfair advantage, corrupting competition and notions of fair play and sportsmanship.[2] The consequences of steroid use are well known to the Court, and it should not regard this offense conduct as a mild offense.

As against these considerations, the PSR does not disclose any aspects of Rivera's history and characteristics, or explanations for the offense conduct, that warrant mitigation. To be sure, Rivera has had difficulty in his life, and the Government does not suggest otherwise. But he has not suffered from the kind of traumatic upbringing, substance abuse, educational deficits, or other setbacks that justify a variance from the guidelines. Rather, taking his history and characteristics together with his offense conduct, it is plain that the guidelines yield (in essence) an appropriate outcome. To his credit, Rivera promptly and credibly took responsibility for his offense conduct after his arrest, and has shown an appropriate level of remorse and accountability. The recommended outcome of this case takes a fair view of the facts, and Rivera has earned that consideration. For all these reasons, the joint recommendation of 96 months is appropriate.

Following Rivera's term of custody, the Court should place him on four years of supervised release. Rivera has a sophisticated understanding of how to conduct internet commerce and, with time and structure, has the capacity for successful, profitable, legitimate work. But he has not had legitimate employment for years, and will require help from Probation to establish a law-abiding existence. So too, given the nature of Rivera's conduct, the Court cannot discount the possibility that he would be tempted to return to it.

---

[2] To be sure, steroids are not akin to the drugs this Court sees far more often, such as fentanyl, heroin, cocaine, and methamphetamine. The Sentencing Guidelines correctly recognize that those drugs are far more dangerous and addictive. But steroids too have harmful effects, and are controlled for good reason.

*Sentencing Memorandum of the United States*  4

An extended period of supervision will be important for helping him avoid recidivism too.

Finally, the Government asks the Court to enter the forfeiture order with the judgment. No fine is necessary in this particular case.

DATED: August 13, 2023  Respectfully Submitted,

ANDREW R. HADEN
Acting United States Attorney

/s/ *Owen Roth*
OWEN ROTH
Assistant United States Attorney